642 So.2d 287 (1994)
Viola CHOYCE & Calvin Choyce
v.
SISTERS OF the INCARNATE WORD d/b/a Schumpert Medical Center.
No. 25958-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1994.
Rehearing Denied September 15, 1994.
*288 Mayer, Smith & Roberts by Kim Purdy, Shreveport, for defendant-appellant.
Fredric Lewis, Jr., Shreveport, for plaintiffs-appellees.
Before NORRIS, LINDSAY and BROWN, JJ.
BROWN, Judge.
At about 5 p.m. on Sunday, April 14, 1991, plaintiff, Viola Choyce, entered Schumpert Medical Center (Schumpert) to visit a friend. After passing through the reception lobby, she walked the main hallway to the elevators where she slipped and fell, sustaining a spiral fracture of the left distal femur above the knee. Plaintiff filed this action against Schumpert, along with her husband, Calvin Choyce, who sought damages for loss of consortium. Judgment was rendered in plaintiffs' favor. Schumpert appealed and plaintiffs answered, seeking an increase in the award. For the reasons set forth below, we affirm.

FACTS
On April 14, 1991, at approximately 5:00 p.m., Viola Choyce went to Schumpert to visit a friend. She entered the main hallway, walked down the hall past the business; office toward the elevators, slipped and fell backwards. Mrs. Choyce, who was employed by Schumpert as a part-time nurse's aide since 1981, had walked this hall many times. She was wearing a dress and had on shoes with closed toes, rubber soles, 3½ inch heels and no heel strap or back. The shoes were approximately 10 years old and Mrs. Choyce had been wearing them since 9:00 that morning.
There was no foreign substance on the floor. The floor was a marble type tile also described as terrazzo. The trial court found that the floor "was highly waxed or buffed to the extent that it was slippery." The trial *289 court further found "[t]he testimony is diverse as to exactly how the floor is maintained, but the preponderance of the evidence supports the conclusion that some type of wax or cleaner is sprayed on the floor after which it is buffed and polished to a bright shine. The testimony is consistent from all of the witnesses that a tile floor such as the one on which Mrs. Choyce fell, becomes slick or slippery when repetitively buffed or waxed."
Mrs. Choyce had a pre-existing injury to her left knee as the result of a February 1990 accident at her residence. Following surgery to her left kneecap, she was released by her doctor in 1990 without restrictions.
The trial court resolved the issue of whether the condition of the floor caused the plaintiff to fall by examining the testimony of the witnesses and evaluating their credibility. The trial court found that a preponderance of the evidence supported the conclusion that the slippery condition of the floor was a hazard that caused Mrs. Choyce to slip and fall. The trial court awarded Mrs. Choyce general damages of $85,000.00; $34,303.43 in past medical expenses; $3,100.00 in future medical expenses; and $8,943.04 in lost wages. The trial court awarded Calvin Choyce $3,500.00 for loss of consortium.

DISCUSSION

Causation
Schumpert contends that the mere fact that plaintiff fell is not evidence of why she fell. This court recognizes that proof of an accident does not, in and of itself, prove negligence or defect; however, when coupled with other evidence, it has considerable significance. Mrs. Choyce testified that after her fall, she noticed a long black skid mark and that the floor around where her accident occurred was "very slippery, very waxed and very shiny," but was no different in appearance from the rest of the floor. Mrs. Choyce stated that she fell because the floor was slippery. Shortly after the accident, Calvin Choyce visited his wife and inspected the area of the floor where she fell. He found the floor to be waxed, buffed, shiny and slippery.
Two witnesses, Anthony Barton and Robert McIntosh, were summoned to the scene after the fall. Barton, a security guard at Schumpert, stated that he examined the area and found that the floor was not slippery and appeared normal with no traces or markings. After assisting Mrs. Choyce, Barton returned and found nothing, in his opinion, that would have caused the fall.
Robert McIntosh, also a Schumpert security guard, assisted Mrs. Choyce. McIntosh was responsible for investigating the incident. He agreed with Barton's testimony regarding the condition of the floor. He ran his shoes over the floor at the spot of the fall and did not believe it to be slippery. A report prepared by McIntosh at 5:20 p.m. on the date of the accident was consistent with his trial testimony.
Mrs. Choyce's testimony that the floor was slippery was supported by the testimony of J.L. Dent. Dent was, at the time of trial, employed by Western Hills Baptist Church as a custodian and had previously worked as a "floor technician" for various custodial service companies. He was accepted by the defense and trial court as an expert on floor maintenance. Dent testified that marble tile, like that in Schumpert's lobby, does not require waxing. Once it ages, marble tile may be waxed in order to enhance its appearance; however, if it is "constantly buffed" or "buffed every night," the tile will become slippery. Dent further testified that judging by its appearance, the floor at Schumpert was old and well maintained. He stated that to make such an old marble floor look good, it would have to be waxed and buffed. Dent was unable to view the area where the accident occurred because it had been carpeted, but he did view the floor in Schumpert's lobby, which was the same type of floor as the area where the fall occurred.
Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court is convinced that had it been the trier of fact, it would have weighed the evidence differently. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990). The trier of *290 fact is in a better position to evaluate the credibility of witnesses and make factual determinations than a reviewing court. Where two permissible views of the evidence exist, the trier of fact's choice cannot be manifestly erroneous or clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
The trial judge found Viola Choyce to be a credible witness, stating that her testimony was "probably the most singularly credible testimony I've ever heard in any case." The conflicting testimony of the two employees of Schumpert is also reasonable, but no more so than the testimony of Mrs. Choyce. The trial court had the benefit of hearing and seeing the witnesses testify first hand and, as noted above, was obviously impressed with the credibility of Mrs. Choyce.
The only testimony concerning the frequency of waxing and buffing the floor in question was given by Mrs. Choyce and the two Schumpert security guards, Anthony Barton and Robert McIntosh. Mrs. Choyce stated that she noticed at work that the floor was sprayed and buffed each morning between 2:00 and 3:00 a.m. She did not know exactly what substance was sprayed on the floor.
Barton testified that on week nights, a crew buffed the floors at the hospital, though they did not buff each floor every night. Therefore, he assumed that the floor was last buffed early Friday morning, while the accident occurred on Sunday. Barton's shift, however, ended at 11:30 p.m. and he was not present at 2:00 and 3:00 a.m. when Mrs. Choyce said the floors were buffed. McIntosh's testimony corroborated Barton's as to the times that the floors were waxed and buffed.
The testimony of plaintiff's expert that marble tile and terrazzo type floors become slippery when waxed is uncontroverted. There is no testimony or evidence in the record that tends to call into question his assessment of the properties of these types of floors. The trial court found this expert testimony persuasive and also determined that there was no doubt that the floor was frequently waxed and buffed. Thus, the trial court reasoned that the floor was slippery and that this condition created a hazard which presented an unreasonable risk of harm. Based on the record, we can not say that this finding is manifestly erroneous or clearly wrong.
Schumpert also argues that the trial court found that the floor caused plaintiff to fall simply because it was waxed and buffed to a bright shine. The trial court, however, found that because of the frequent application of wax and buffing, the floor became slippery and caused the fall.
In the context of slip and fall cases, a premise hazard is shown to exist when the fall results from a foreign substance on the floor or from an otherwise unreasonably slippery condition. Richard v. Dollar General Store, 606 So.2d 831 (La.App. 2d Cir.1992), writ denied, 608 So.2d 197 (La.1992); Stockwell v. Great Atlantic & Pacific Tea Company, 583 So.2d 1186 (La.App. 1st Cir.1991); Kinchen v. J.C. Penny Co., Inc., 426 So.2d 681 (La.App. 1st Cir.1982). Plaintiff therefore had to show that an unreasonably slippery condition caused her fall. Plaintiff was able to meet her burden by showing that the floor was of a type that becomes unreasonably slippery if repeatedly waxed and buffed and that this was how the floor was maintained, not by showing that the floor was waxed and buffed to a bright shine. The trial court found that the evidence supported plaintiff's contention that the type of floor and the maintenance performed on it caused it to be unreasonably slippery, thereby creating a hazard.
The trial court found that this hazardous condition caused plaintiff to slip and fall. Plaintiff had been wearing her shoes for at least several hours and had worn them for years prior to the accident without having ever tripped or fallen. She was familiar with the area where the accident occurred. There was insufficient evidence to show that plaintiff's prior knee problems and the type of shoes she was wearing caused her to trip and fall while walking a straight line down the middle of the hall. We can not say that the trial court was manifestly erroneous in finding that the hazardous condition of the floor caused plaintiff to slip and fall.

*291 Liability

Defendant also contends that the trial court erred in finding negligence and/or strict liability. The written opinion of the trial court is unclear as to which theory it applied. Whether the hazardous condition is one in the premises or on the premises determines which theory is applicable. If the defect is in the premises, then strict liability and negligence are available, whereas if the defect is on the premises only negligence is applicable. Collins v. Christophe, 479 So.2d 537 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986). In the case sub judice, the defect was on the premises. The floor alone, which is part of the premises, is not defective as it is suitable for its intended use. It is the repeated application of wax and buffing that creates the defect. Because the defect was on the premises, strict liability under LSA-C.C. Art. 2317 is not applicable. This case is one of negligence under LSA-C.C. Art. 2315. Simmons v. City of Monroe, 588 So.2d 1357 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (La.1992); Waters v. McDaniel Recreation Center, 521 So.2d 788 (La.App. 2d Cir.1988), writ denied, 524 So.2d 520 (La.1988). We thus pretermit a discussion of strict liability.
Under Louisiana law, when a plaintiff proves she slipped and fell on a foreign substance or on a wet, damp or slippery floor, the burden shifts to the defendant to exculpate itself from the presumption of negligence. ANMAC Foundation Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951 (La.App. 3d Cir.1992); Scott v. Hospital Service District No. 1, 484 So.2d 168 (La. App. 5th Cir.1986), reversed on other grounds, 496 So.2d 270 (La.1986). A hospital has a duty to exercise reasonable care to protect those who enter its premises. This duty extends to keeping the premises safe from unreasonable risks of harm and to adequately warn potential victims of the existence of the danger. Perkins v. Springhill General Hospital, 278 So.2d 900 (La.App. 2d Cir.1973); ANMAC Foundation Inc., supra; Bordelon v. Southern Louisiana Health Care Corp., 467 So.2d 167 (La.App. 3d Cir. 1985), writ denied, 469 So.2d 989 (La.1985).
It is not disputed that defendant had custody of the property causing the damage. We have already found that the floor was maintained in a manner that created an unreasonable risk of harm and that this condition was the cause-in-fact of plaintiff's injury. We now address the final issue of whether defendant exculpated itself from the presumption of negligence. We note that defendant's employees created the hazard by maintaining the floor in such a manner as to make it slippery. It is plain from the evidence and is not in dispute that the maintenance of the floor was part of Schumpert's housekeeping operations and that defendant's employees operated within the course and scope of their employment. There was no evidence that tended to exculpate Schumpert from the presumption of negligence and we find no manifest error in the factfinder's determination that Schumpert was liable for the damages that resulted from Mrs. Choyce's slip and fall.

Damages
Viola and Calvin Choyce answered the appeal, seeking an increase in the damages awarded. Viola Choyce claims that the trial court erred in calculating the amount of her lost wages and requests that we modify the award. Calvin Choyce requests that we raise his award for loss of consortium.
In assessing damages, much discretion is left to the trier of fact. LSA-C.C. Article 2324.1; Sledge v. Continental Casualty, 639 So.2d 805 (La.App. 2d Cir.1994). Before an appellate court may disturb an award of damages, the record must clearly show that the trial court abused its broad discretion in making the award. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993).

Lost Wages
The trial court awarded Mrs. Choyce lost wages in the amount of $8,943.04. She requests that this award be raised to $13,163.12.
Loss of income resulting from an offense or quasi-offense is an item of special damages which in many cases is not susceptible of proof to a mathematical or legal certainty. Clark v. Ark-La-Tex Auction, Inc., *292 593 So.2d 870 (La.App. 2d Cir.1992), writ denied, 596 So.2d 210 (La.1992). The trier of fact is afforded much discretion in the determination of such damages where the evidence clearly shows the damage is proven but is not subject to exact calculation. Clark, supra.
We find no abuse of the trial court's discretion.[1]

Loss of Consortium
Calvin Choyce requests that we increase his award for loss of consortium. A claim for loss of consortium is broken down into several elements including loss of (1) love and affection; (2) society and companionship; (3) sexual relations; (4) the right of performance of material services; (5) the right of support; (6) aid and assistance; and (7) felicity. Proof of any of these elements is sufficient to support an award for loss of consortium. Keeth v. State Department of Public Safety and Transportation, 618 So.2d 1154 (La.App. 2d Cir.1993); Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985).
Although believing the award to be on the low side, we conclude that the trial court did not abuse its discretion in awarding $3,500.00 to Mr. Choyce for loss of consortium. See Bacle v. Wade, 607 So.2d 927 (La.App. 2d Cir.1992); Daigle v. Legendre, 619 So.2d 836 (La.App. 1st Cir.1993), writ denied, 625 So.2d 1040 (La.1993); and Higley v. Kramer, 581 So.2d 273 (La.App. 1st Cir.1991), writ denied, 583 So.2d 483 (La. 1991).

CONCLUSION
For the reasons set forth above, the trial court's judgment is affirmed. Costs of this appeal are assessed to defendant-appellant. AFFIRMED.
LINDSAY, J., dissents with written reasons.
LINDSAY, Judge, dissenting.
I respectfully dissent. The plaintiffs simply failed to prove that a premise hazard existed to the extent that the floor was unreasonably dangerous for normal use.
Mrs. Choyce was limping when she entered the hospital. Her trial testimony was impeached by her statement immediately after the accident which indicated that she fell because of her weak knee. (The knee had been injured in a previous accident.) The persons who investigated the accident found no defect in or on the floor.
The "expert" presented by plaintiffs never examined the floor in question, never saw plaintiff's shoes or performed any scientific tests. At best, he testified that too much waxing and buffing "could" cause a floor surface to become slippery. However, upon his only inspection of the premises when he observed the lobby area with its wax or sealant (the type of which was never determined), he did not find it slick or hazardous.
The evidence did not show when the floor was waxed and buffed. However, the last time this floor could have been waxed and buffed before the fall was late Friday night or early Saturday morning. It defies common sense to believe that this floor, in the main entrance hallway of one of the largest and busiest hospitals in North Louisiana, was "slippery" as a result of being waxed and buffed when this accident occurred on the following Sunday afternoon. Under all the circumstances presented in this case, the burden of proof never shifted to the defendant to exculpate itself from liability.
Under the standard of proof allowed by the trial court and the majority, the owner of any building with a shiny floor will now subject itself to liability when no more evidence is adduced than the floor is shiny and that improper maintenance "may" cause the floor to be slippery. I respectfully dissent.

APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, HIGHTOWER, VICTORY AND BROWN, JJ.
Rehearing denied.
NOTES
[1] We note that only two judges are required to affirm the trial court's award. For an increase in an award of damages, three judges are required. See LSA-Const. Article 5, § 8(B).