721 So.2d 1068 (1998)
Patricia A. COLEMAN and Elder Joseph Coleman, III
v.
WAL-MART STORES, INC. and XYZ Insurance Company.
No. 98 CW 0124.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
*1069 Geoffrey J. Orr, Metairie, for defendant/relator Wal-Mart Stores, Inc.
Travis L. Bourgeois, New Orleans, Alan M. Black, Slidell, for plaintiffs/respondents Patricia A. Coleman and Elder Joseph Coleman, III.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
WHIPPLE, Judge.
This matter is before us on remand from the Louisiana Supreme Court. At issue is the trial court's denial of defendant/relator's motion for summary judgment in a store slip and fall case.

PROCEDURAL HISTORY
Plaintiffs, Patricia and Elder Coleman, filed suit against relator, Wal-Mart Stores, Inc., seeking damages arising from the slip and fall Elder had on August 5, 1991. After a jury trial, judgment was signed on February 22, 1994, in conformity with the jury verdict in favor of Wal-Mart. The trial court then granted a new trial due to its failure to instruct the jury on strict liability. This court, acting through another panel, issued a ruling on defendant's application for supervisory writs on September 12, 1994, under docket number 94 CW 1214 and reversed the granting of the new trial, stating:

*1070 Plaintiffs concede in brief that there was no evidence introduced at trial that would prove or indicate the period of time that the foreign substance was on the floor. Under [LSA-]R.S. 9:2800.6 and Welch, et al. v. Winn-Dixie Louisiana, Inc., et al., 92-2372 (La.App. 1st Cir.8/22/94), [645] So.2d [647], the trial court erred in granting the new trial.
However, on May 22, 1995, the Louisiana Supreme Court reversed the First Circuit's decision in Welch v. Winn Dixie Louisiana, Inc., 94-2331 (La.5/22/95); 655 So.2d 309. Thus, on December 7, 1995, this court, in a decision with one judge dissenting, granted a rehearing, recalled the earlier writ action and reinstated the trial court's ruling granting the motion for new trial. The Louisiana Supreme Court denied writs on February 28, 1996. Coleman v. Wal-Mart Stores, Inc., 96-0065 (La.2/28/96); 668 So.2d 362. Accordingly, the case was remanded to the trial court to proceed with the order granting a new trial. In the meantime, the Louisiana Supreme Court overruled its holding in Welch by its decision in White v. Wal-Mart Stores, Inc., 97-0393, p. 1 (La.9/9/97); 699 So.2d 1081, 1082.
Thereafter, on remand, Wal-Mart filed a motion for summary judgment using relevant portions of the transcript of the prior trial and discovery depositions. Relator contended that there was no evidence to show it had actual knowledge of the substance on the floor causing plaintiff's slip and fall. Relator further contended that in the absence of actual knowledge, plaintiffs were required to establish by positive proof the temporal element required by LSA-R.S. 9:2800.6(C) (1991), as interpreted by the Louisiana Supreme Court in White v. Wal-Mart Stores, Inc., to show relator had constructive knowledge. Relator maintained that because plaintiffs had failed at the first trial to show that the liquid had been on the floor for some time before Coleman's fall, and further, because plaintiffs had indicated that they would offer no new witnesses or exhibits, plaintiffs could not prove this essential element of their claim, i.e., the temporal element necessary to charge relator with constructive knowledge. Thus, relator argued, it was entitled to summary judgment dismissing plaintiffs' claims as a matter of law. Plaintiffs filed an opposition to Wal-Mart's motion for summary judgment, and after a hearing on the motion on December 5, 1997, relator's motion was denied by judgment dated December 18, 1997.
From the trial court's denial of the motion for summary judgment, Wal-Mart filed a supervisory writ application to this court, which was denied. Coleman v. Wal-Mart Stores, Inc., 98 CW 0124 (La.App. 1st Cir.4/15/98). Relator then applied to the Louisiana Supreme Court for review of this court's denial of the writ application. On June 19, 1998, the Louisiana Supreme Court granted the application for writ of certiorari and ordered a remand of the matter to this court for briefing, argument and opinion. Coleman v. Wal-Mart Stores, Inc., 98-1277 (La.6/19/98); 720 So.2d 1208.
On remand from the Supreme Court, Wal-Mart contends the trial court erred in its application of LSA-C.C.P. art. 966(C) and erred in denying its motion for summary judgment.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97); 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29. It should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996, the legislature amended LSA-C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgments are now favored, and the documents submitted by both parties are *1071 to be equally scrutinized. Berzas v. OXY USA, Inc., 29,835, pp. 4-5 (La.App. 2nd Cir.9/24/97); 699 So.2d 1149, 1152; Hayes v. Autin, 96-287, p. 6 (La.App. 3d Cir.12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.
In 1997, by Act No. 483, the legislature again amended LSA-C.C.P. art. 966 to incorporate the federal summary judgment analysis. The 1997 amendment to LSA-C.C.P. art. 966 applies retroactively and is to be utilized by this court in assessing summary judgments granted prior to the effective date of the amendment. Morgan v. Earnest Corp., 97-0869, p. 7 (La.App. 1st Cir.11/7/97); 704 So.2d 272, 276, writ denied, 97-3031 (La.2/20/98); 709 So.2d 775. Under the amended version of LSA-C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party then must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967; Berzas, 29,835 at p. 8; 699 So.2d at 1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Sanders, 96-1751 at p. 7; 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1st Cir.12/29/97); 706 So.2d 525, 528.

Burden of Proof on Motion for Summary Judgment Involving Claims against Merchants
Louisiana Revised Statute 9:2800.6 (1991), as revised in 1990 and in effect at the time of the instant accident, addressed the burden of proof in claims against merchants and provided in relevant part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.[1]
The Louisiana Supreme Court has held that the burden of proof rests with the *1072 plaintiff to prove each of the three elements set forth in LSA-R.S. 9:2800.6(B). White, 97-0393 at p. 4; 699 So.2d at 1084. Thus, to recover against a merchant, the claimant must prove: (1) the condition which caused the injury created a foreseeable and unreasonable risk of harm; (2) the merchant had actual or constructive notice that the condition existed for a period of time prior to the accident; and (3) the merchant failed to exercise reasonable care. White, 97-0393, p. 4 (La.9/9/97); 699 So.2d at 1084. As set forth in White, the failure to prove any one of the three elements will negate a claimant's cause of action.

Constructive Notice
In White, the Louisiana Supreme Court discussed constructive notice and the need for positive proof of the temporal element, stating as follows:
[B]ecause constructive notice is plainly defined to include a mandatory temporal element, we find that where a claimant is relying upon constructive notice under La. R.S. 9:2800.6(B)(2) (1991), the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence. (Emphasis added).
White, 97-0393 at p. 1; 699 So.2d at 1082.
Holding that the Court's decision in Welch v. Winn-Dixie was contrary to the clear meaning of LSA-R.S. 9:2800.6 and should be overruled, the Court stated:
Therefore, because the court of appeal and the trial court erroneously shifted the burden to the defendant to prove a lack of constructive notice, and because the plaintiff failed to otherwise prove that Wal-Mart had constructive notice of the spill, we reverse and find for defendant, Wal-Mart.
White, 97-0393 at p. 1; 699 So.2d at 1082.
The Court further stated:
Constructive notice, at issue here, is defined by Section (C)(1). The definition is likewise clear and unambiguous. There is a temporal element included: "such a period of time ..." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden. (Emphasis added).
White, 97-0393 at p. 4; 699 So.2d at 1084.
In discussing how long the condition had to be present to warrant a finding of constructive notice by the merchant, the Supreme Court noted:
Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time ..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden. (Footnote omitted).
* * * * * *
The statute is clear. To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care. (Emphasis added).
White, 97-0393 at pp. 4-5, 7; 699 So.2d at 1084-1085, 1086.
Thus, the Court concluded, because plaintiff presented absolutely no evidence that the liquid was on the floor for any length of time, plaintiff's complete lack of evidence on this *1073 issue fell short of carrying the burden of proving that the liquid had been on the floor for such a period of time that the defendant should have discovered its existence. White, 97-0393 at pp. 1, 4, 7; 699 So.2d at 1082, 1084, 1086.
Bearing these principles in mind, we consider the case before us.

DISCUSSION
In their petition, plaintiffs alleged that Elder fell in the customer service area of Wal-Mart on a foreign substance which created a hazardous condition. Plaintiffs first alleged that the source of the foreign substance was a Wal-Mart employee. Plaintiffs further alleged that relator was liable for failing to properly maintain the floors to keep them free from hazardous substances or, in the alternative, that relator was strictly liable.
Relator contends that based on the evidence from the prior trial submitted in support of the motion for summary judgment, plaintiffs are unable to show that relator had either actual or constructive knowledge of the condition causing Elder Coleman's fall. Relator contends that the evidence shows: (1) plaintiffs can not establish how long the liquid was on the floor; (2) the liquid was probably urine; (3) there is no evidence that any employee was responsible for the liquid being on the floor; (4) there is no evidence that any of relator's employees knew the liquid was on the floor; and (5) the evidence shows instead that the substance was placed or landed on the floor immediately before plaintiff's fall.
In support of its claim that this court should reverse the trial court's denial of the motion for summary judgment, relator cites the trial and deposition excerpts submitted with its motion. The testimony of Elder Coleman reveals the following. Elder stated that he arrived at Wal-Mart between 11:00 a.m. and 11:30 a.m., and went to the customer service desk, where he sat at a bench and waited for his number to be called.[2] Elder went up to the customer service desk, then went to the electronics department, but he did not walk over the area where he later fell. Within 5 to 10 minutes, he returned to the customer service desk. As he walked away, he slipped and fell. He said that the substance he fell on was clear and that he did not see it before the fall. When he was in the customer service area initially, he saw no one having difficulty negotiating the floor and he did not observe anything on the floor. Elder did not know what substance he fell on, although he said it was possible the substance was urine.
Additionally, relator supported its motion for summary judgment with testimony from trial and deposition excerpts of seven other witnesses, all of whom are either former or current Wal-Mart employees. Debbie Penton, a customer service desk employee working when Elder fell, testified that she witnessed the fall, that the store was exceptionally busy that day, that customer service was "really crowded," and that no one else slipped. After the fall, she looked over the counter and saw a clear puddle. She said she did not know there was anything on the floor before Elder fell. She stated that in order to see the liquid, she had to lean over the top of the counter to view the floor.
Jackie Williams testified that she was a sweeper for Wal-Mart at the time of the accident and that she had done her last safety sweep on the morning of August 5, 1991, prior to the accident. She testified that the substance on the floor "wouldn't have been there too long." She thought the substance looked "yellowish." Larry Abram testified that although he was a safety sweeper for Wal-Mart, he was not at work when plaintiff fell. Craig Revon testified that he currently did safety sweeps for Wal-Mart but was not employed at Wal-Mart on the date of the accident.
Opal Veulman, a manager for Wal-Mart, testified that she walked up to the scene of the accident and thought the substance on the floor was urine, based on its color. Sidney Salvant, a Wal-Mart employee, testified that the substance on the floor was urine because he smelled it and saw that it had a *1074 yellowish tint.[3] In the excerpt of Debbie Penton's deposition testimony, Penton testified that after Elder had slipped, a customer told her that a little boy had "peed" on the floor and that a lady had gone to get paper towels to clean it up. Penton did not know the customer and could not describe her. Tommy LaPoint, in his deposition excerpt, stated that immediately after seeing Elder lying on the floor, he saw a woman going to the restroom with a child in a buggy whose panties were wet. He concluded the wet substance on the floor was urine. He did not get the woman's name or address.
Based on this evidence, Wal-Mart contends it was entitled to judgment in its favor as a matter of law, because the evidence fails to show defendant either created or had actual or constructive notice of the condition which caused the damage prior to plaintiff's slip and fall. Wal-Mart contends that because the testimony fails to establish that the liquid was present on the floor for any length of time before Elder's fall, plaintiffs can not establish that Wal-Mart had constructive notice of the condition, warranting summary judgment in favor of relator.
Plaintiffs allege that the evidence presented in the first trial satisfied the temporal element required for constructive notice under White. Plaintiffs refer to the four cases cited in White, noting that in each of these four cases, no witness directly testified as to how long the foreign substance was on the floor.[4]
In opposition to the motion for summary judgment, plaintiffs rely on Elder's testimony that he was in the electronics department for 5-7 minutes and that he waited a few minutes on his return to customer service. According to plaintiffs, this testimony establishes that the liquid was on the floor for at least 7-10 minutes before he fell.
Additionally, plaintiffs contend that because Williams said she began her sweep at 11:15 and reached the service counter at 11:45-11:50, they have established that the liquid had been on the floor for at least 15 minutes prior to the fall. Plaintiffs also refer to Williams' statement that a person could not see the floor in the customer service area when it was crowded as proof that the liquid may have been there even longer. As further support, plaintiffs rely on excerpts from Williams' trial testimony that she and other employees did not go through and sweep the customer service area on crowded days because they could not get to it and that if she did not see items in the customer service area to sweep, she would do just a visual inspection.
Finally, plaintiffs argue that because the source of the liquid on the floor was obvious to Tommy LaPoint and the unnamed woman who told Debbie Penton that a child had urinated in the area, after apparently having noticed the condition when it happened, the Wal-Mart employees likewise should have seen the urine on the floor.
Considering the above testimony, clearly there has been no showing that any Wal-Mart employee caused the liquid to be on the floor or that any Wal-Mart employee had actual notice of the liquid on the floor prior to the accident. Thus, the present case turns upon the question of whether Wal-Mart had "constructive knowledge" of the liquid prior to the accident and whether plaintiffs' proof establishes constructive knowledge within the scope of White, 97-0393 at pp. 3-6; 699 So.2d at 1083-85.
Applying the principles set forth in White, we find that defendant established a prima facie case, based on testimony taken from the first trial and the discovery depositions showing that the liquid in which Elder Coleman slipped landed on the floor only moments before he fell. The evidence relied upon by plaintiffs does not show that the liquid was on the floor for any period other than the briefest of moments before the accident, as claimed by defendant.
*1075 In our view, a showing that a hazard or impediment was created only moments before an accident is not sufficient to place a merchant on constructive notice of the condition as would justify finding negligence on the part of the merchant. Therefore, we find that plaintiffs failed to meet their burden of proof as required by the LSA-C.C.P. art. 966(C)(2) and LSA-R.S. 9:2800.6(B)(2).
In this case, it is undisputed that plaintiff slipped in a foreign substance on the floor. The evidence presented by both sides shows that the slip was caused by a hazardous condition "on" the premises rather than a defect "in" the premises. Because the alleged defect was a foreign substance "on" the premises, strict liability under LSA-C.C. art. 2317 is not applicable, and the case presents a negligence action within the ambit of LSA-C.C. 2315 and LSA-R.S. 9:2800.6.[5] Thus, absent proof by plaintiffs that the liquid was present for a sufficient period of time to establish constructive knowledge of the hazardous condition, we conclude the trial court erred, as a matter of law, in denying relator's motion for summary judgment.

CONCLUSION
Accordingly, for the foregoing reasons, we grant relator's writ application, reverse the judgment of the trial court denying summary judgment and render judgment granting summary judgment and dismissing plaintiffs' suit at plaintiffs' costs.
WRIT GRANTED AND MADE PEREMPTORY, REVERSING THE DENIAL OF SUMMARY JUDGMENT BY THE TRIAL COURT, GRANTING RELATOR'S MOTION FOR SUMMARY JUDGMENT, AND RENDERING JUDGMENT DISMISSING PLAINTIFFS' SUIT.
NOTES
[1] We note that the legislature has since amended LSA-R.S. 9:2800.6, effective May 1, 1996 to clarify that the presence of an employee in the vicinity does not, alone, constitute constructive notice. The amendment also provides that the absence of written or verbal uniform cleanup or safety procedures is insufficient, alone, to show a lack of reasonable care. LSA-. R.S. 9:2800.6 (Supp. 1997). The amended statute expressly applies only to causes of action arising on or after the effective date. 1996 La. Acts No. 8, § 2. Thus, all references herein to LSA-R.S. 9:2800.6 are to the 1991 version in effect until May 1, 1996. For a legislative and jurisprudential history of LSA-R.S. 9:2800.6, see White, 97-0393 at p. 3 n. 2; 699 So.2d at 1084 n. 2.
[2] At the trial, a photograph of the store was introduced during Elder's testimony. However, relator did not submit the photograph in support of the motion for summary judgment.
[3] In an accident report, Salvant indicated he initially thought the substance on the floor was water.
[4] See Treadaway v. Shoney's, Inc., 93-1688 (La. App. 4th Cir.2/25/94); 633 So.2d 841; Oalmann v. K-Mart Corp., 630 So.2d 911 (La.App. 4th Cir.1993), writ denied, 94-0244 (La.3/18/94); 634 So.2d 859; Saucier v. Kugler, 628 So.2d 1309 (La.App. 3rd Cir.1993); and Cobb v. Wal-Mart Stores, Inc., 624 So.2d 5 (La.App. 5th Cir.1993).
[5] In their brief, plaintiffs contend that they have alleged a theory of liability under LSA-R.S. 9:2800.6, but outside the scope of White, that is, that relator is liable for creating a hazardous condition on or in its premises. Plaintiffs allege that relator created a hazardous condition in its store by failing to inspect, clean and warn, referring to statements made by the original trial court in oral reasons for granting the motion for new trial based upon failure to properly instruct the jury, and citing Choyce v. Sisters of the Incarnate Word, 25,958 (La.App.2d Cir.8/19/94); 642 So.2d 287, writ denied, 94-2510 (La.12/9/94); 647 So.2d 1119. However, contrary to plaintiffs' assertion in brief, in Choyce, the court found that strict liability did not apply because the defect was on the premises, not in the premises, stating:

In the case sub judice, the defect was on the premises. The floor alone, which is part of the premises, is not defective, as it is suitable for its intended use. It is the repeated application of wax and buffing that creates the defect. Because the defect was on the premises, strict liability under LSA-C.C. Art. 2317 is not applicable. This case is one of negligence under LSA-C.C. Art. 2315.
Choyce, 25,958 at p. 6; 642 So.2d at 291. We likewise find no merit in this argument.