785 So.2d 842 (2000)
Donald R. DICKERSON
v.
PICCADILLY RESTAURANTS, INC. d/b/a Ralph & Kacoo's and Darryl Edwards.
No. 99 CA 2633.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
Rehearing Denied March 16, 2001.
John B. Lambremont, Sr., Alan L. Schwartzberg, Baton Rouge, Counsel for Plaintiff-Appellant, Donald R. Dickerson.
*843 Dennis A. Pennington, Baton Rouge, Counsel for Defendant-Appellee, Piccadilly Restaurants, Inc. d/b/a Ralph & Kacoo's.
Before: LeBLANC, KUHN and MOORE,[1] JJ.
MOORE, J.
This appeal is from a summary judgment in favor of Piccadilly Restaurants, Inc., finding that the defendant/employer is not vicariously liable to Donald R. Dickerson, plaintiff, for the intentional tort of an employee in the absence of an employment-rooted dispute.
A judgment was signed dismissing plaintiff's claim, the court finding that no genuine issue of material fact existed and that as a matter of law, Piccadilly Restaurants, Inc. d/b/a Ralph & Kacoo's (Piccadilly) was entitled to judgment. Plaintiff's motion for a new trial was denied by the court. A devolutive appeal was filed by the plaintiff.
We affirm the trial court judgment.

FACTUAL BACKGROUND
A fight between Donald R. Dickerson and Darryl Edwards, employees of Ralph's & Kacoo's, occurred at approximately 4:15 p.m. at the restaurant on October 3, 1996. Dickerson had been at work most of the day, when Edwards arrived at 4:00 p.m. Dickerson was employed as a fry-cook, with general duties of food preparation for frying and catering. Edwards was also a fry-cook. As Edwards arrived and punched in on the time clock, he was told by another employee, Lance Milton, that Dickerson had attempted to "break into" Edwards' personal toolbox left at the restaurant from the day before. Edwards confronted Dickerson and struck Dickerson with his forearm. A scuffle broke out during which Edwards grabbed a whitehandled knife being used by Dickerson. By the time the fight ended, Dickerson had sustained stab wounds and lacerations to his right thumb, left hand, back, and side.
Dickerson brought suit naming as defendants Edwards and Piccadilly Restaurants, Inc. d/b/a Ralph & Kacoo's. Dickerson alleged that Ralph & Kacoo's was vicariously liable for the intentional tort committed on Dickerson by Edwards during the course and scope of Edwards' employment. Piccadilly filed a general denial answer and an alternative cross claim against Edwards. Piccadilly also filed a motion for summary judgment, urging its non-liability because Edwards' actions were not undertaken in the course and scope of his employment and that as a matter of law the employer could not be held vicariously liable. Counsel for defendant-appellee attached depositions of Dickerson, Edwards, Lance Milton, Brenda Harris, another kitchen employee, and the affidavit by Les Guerin, a unit manager at the restaurant.

SUMMARY JUDGMENT
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966A(2). Summary judgments are reviewed on appeal de novo, under the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Penton v. Clarkson, 633 So.2d 918 (La.App. 1 Cir.1994).
In Louisiana, the law regarding summary judgment is set forth in La. C.C.P. art. 966. This article was amended by Acts 1996 First Ex.Sess., 9 Section 1 to *844 legislatively overrule the jurisprudential presumption against summary judgment. The amendment "levels the playing field" between the parties by allowing the supporting documents submitted by the two parties to be scrutinized equally and removing the overriding presumption in favor of trial on the merits. Haves v. Autin, 96-287, p. 6 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 411.
A motion for summary judgment should be granted if the pleadings, deposition, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B. The motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Witek v. Morrisey, 97-1288 (La.App. 1 Cir. 5/15/98), 712 So.2d 647. The mover has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt on this score should be resolved against granting the motion. Pye v. Insulation Technologies, Inc., 97-237 (La.App. 5 Cir. 9/17/97), 700 So.2d 892; writ denied, 97-2571 (La.12/19/97), 706 So.2d 461.
However, when a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Pye, 97-237 at 4, 700 So.2d at 893; La. C.C.P. art. 967. In effect, after the mover files sufficient documentation to support the motion for summary judgment, the burden shifts to the opponent to prove material facts are at issue. Pye, 97-237 at p. 4, 700 So.2d at 893. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Coleman v. Wal-Mart Stores, Inc., 98-0124, p. 5 (La.App. 1 Cir. 11/6/98), 721 So.2d 1068; Trahan v. Rally's Hamburgers, 96-1837, p. 6 (La.App. 1 Cir. 6/20/97), 696 So.2d 637, 641.

LEGAL PRINCIPLES
The general rule of law in Louisiana is that employers are not vicariously liable for the intentional torts of their employees, in that no right-thinking employer would authorize its employees to commit intentional wrongs, whether committed against third parties or co-employees. Both parties agree that the seminal case considering this issue is LeBrane v. Lewis, 292 So.2d 216 (La.1974). In LeBrane, a supervisor became dissatisfied with an employee, fired him, ordered him to leave the workplace and escorted him to the door. The supervisor and LeBrane argued vigorously; the argument escalated and the supervisor stabbed LeBrane. The court held that the firing of the employee, which was the root cause of the hostility, was employment-related. Vicarious liability was imposed and the court stated:
In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest.
LeBrane. 292 So.2d at 218.
The Supreme Court set forth four factors to be used in determining whether vicarious liability should be imposed, to-wit:

*845 1. Whether the tortious act was primarily employment-rooted;
2. Whether the violence was reasonably incidental to the performance of the employee's duties;
3. Whether the act occurred on the employer's premises; and
4. Whether the act occurred during the hours of employment.
LeBrane, 292 So.2d at 218.
Many cases have interpreted and applied LeBrane. While each case turns on its own facts and are invariably fact-specific, the foundational principles conceptualized in LeBrane remain viable to this day. For example, in Faust v. Mendoza, 415 So.2d 371 (La.App. 1 Cir.1982), a security guard committed a battery on a customer in a hotel ice-cream parlor. Finding that the dispute was created by the customer's disorderly conduct, in that the security guard was hired for the express purpose of keeping order in the ice-cream parlor, this Court held that the altercation was employment-rooted so as to be regarded as a risk of harm fairly attributable to the employer's business. Faust, 415 So.2d at 374.

ANALYSIS
It is without dispute in this case that the third and fourth LeBrane factors are present in this case, namely that the stabbing by Edwards of Dickerson occurred on the employer's premises and that it occurred during the hours of employment. However, an employer is not vicariously liable merely because his employee commits an intentional tort on business premises during working hours. See Scott v. Commercial Union Ins. Co. 415 So.2d 327 (La.App. 2 Cir.1982), citing Bradley v. Humble Oil and Refining Co., 163 So.2d 180 (La.App. 4 Cir.1964). Rather, vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective. Scott, 415 So.2d at 329.
The Supreme Court had occasion to revisit LeBrane in the celebrated case of Baumeister v. Plunkett, 95-2270 (La.5/12/96), 673 So.2d 994. In Baumeister, a nurse was sexually assaulted by a supervisor in a break room while both were on the employer's time clock. The court applying under the LeBrane factors, noted that the tort occurred during the hours of employment and on the employer's premises, thereby satisfying the third and fourth factors under LeBrane. The court held that the tortious act was not employment-rooted nor reasonably incidental to the performance of the employee's duties. Citing and distinguishing Le-Brane, the court in Baumeister stated:
"The LeBrane court expressly noted that the `employees' tortious conduct occurred while the employee was at least partly actuated by his purpose of acting for his employer in the discharge of the recalcitrant co-employee, and it was reasonably consequent upon or incident to his performance of his employment function of hiring and firing sub-employees." Baumeister, 673 So.2d at 997.
The Baumeister Court found that the defendant's actions in precipitating unwanted sexual contact with the plaintiff did not further the employer's business and was not incidental to the performance of defendant's supervisory duties. Furthermore, the court found that the sexual assault was entirely extraneous to the employer's interest and did not involve the threat of the loss of employment. The court therefore held that defendant's acts were not employment-rooted.
In the case sub judice Edwards had just arrived at work and had not yet begun pursuing his employer's interest. He had not yet seen or talked to Dickerson; *846 rather, he had been advised by a co-employee, Lance Milton, that Milton had observed Dickerson attempt to enter Edwards' personal toolbox. Edwards' actions were not actuated by any purpose of his employer nor can it be plausibly said that Edwards' actions in taking umbrage for the perceived invasion of his personal belongings by Dickerson was in any way in support of the employer's principal mission.
Piccadilly correctly points out that in order to sustain a finding of vicarious liability attributable to the employer based upon respondeat superior, the court must distinguish which party is acting on behalf of the employer. In order to hold the employer liable, the tortfeasor must have been acting in a manner not purely personal in nature or extraneous to the employer's interests. In Barto v. Franchise Enterprises, Inc., 588 So.2d 1353, 1357 (La.App. 2 Cir.1991), writ denied. 591 So.2d 708 (La.1992), an employee stabbed a supervisor after being questioned about missing cash. The supervisor sued his employer for the actions of the tortfeasing employee. The supervisor clearly was acting in his employer's interest by seeking to regain the stolen money. However, the tortfeasor sought to avoid being discovered as a thief. The Second Circuit reversed the trial court's denial of the employer's motion for summary judgment, stating:
It is apparent from the circumstances presented in the record that Fletcher intended his actions to harm Barto. The undisputed evidence shows that Fletcher's attack was not related to any of his employment duties, did not further any of his employer's objectives, was not a risk of harm fairly attributable to his employer's business, and was done for purely personal considerations....
Applying these principles to the instant case, in order for Piccadilly to be held vicariously liable under respondeat superior, we must find that Edwards' actions were actuated by a purpose of acting for his employer and that the purpose must be present when the assault on Dickerson occurred. Appellant asserts in brief that "the fight that broke out was over a work knife that was used in the kitchen in the furtherance of the employer's business." However, the record clearly demonstrates that Edwards took offense with Dickerson only because of Dickerson having "messed with" his personal property, the toolbox. Edwards was not on the clock when Dickerson allegedly attempted to enter Edwards' toolbox. The "employment-rooted" element of LeBrane is absent in our case.
Recent appellate jurisprudence also emphasizes the character of the connection of the employee's act to the employment purpose. In Allen v. Payne & Keller Co., Inc., 96-2326, p. 6 (La.App. 1 Cir. 4/8/98), 710 So.2d 1138,1142, writ denied 98-1821 (La.10/16/98), 726 So.2d 908, we noted:
In order for the employer to be liable vicariously, there must be some type of employer-related catalyst, meaning the act performed (the intentional tort) should have some link to an employment-required duty.
In Allen, the employer was not found vicariously liable for the horseplay of his warehouseman. The warehouseman Stafford had evidently hit Allen in the buttocks when the latter was bent over in the warehouse. Although the act of striking Allen was an intentional act occurring in the workplace. "it was not incidental to the performance of Stafford's duties as a warehouseman." Allen, 96-2326 at p. 6, 710 So.2d at 1142. The First Circuit held that vicarious liability will attach only when the employee commits an intentional tort on the business premises during working hours, and if the employee is acting within the ambit of his assigned duties and in *847 furtherance of his employer's objective. Allen, 96-2326 at p. 6, 710 So.2d at 1141; Baumeister, 95-2270 at p. 3-4, 673 So.2d at 996-97.
Our Supreme Court has held that it is not determinative that the predominant motive of the tortfeasing servant is to benefit himself or a third person, for such a motive does not prevent the act from being within the scope of employment. Rather, the court will look to see if the purpose of serving the master's business actuates the servant to any appreciable extent. If so, the master is subject to liability if the act is otherwise within the service. Ermert v. Hartford Ins., Co., 559 So.2d 467 (La. 1990).
In brief, appellee correctly points out that the toolbox is not a work instrument but rather a personal item of Edwards. The knife within the toolbox, which is claimed to be the subject of the fight between Dickerson and Edwards, was never removed from the toolbox, which remained locked prior to and after the fight. No such employer-catalyst exists in order to find this LeBrane factor satisfied.
Benoit v. Capital Manufacturing Co., 617 So.2d 477 (La.1993), is cited by both parties in brief. In Benoit, a fight between co-employees at a manufacturing facility erupted because of a difference of opinion between the co-employees as to whether the back door to the facility should remain open during a cold spell. Citing LeBrane, our Supreme Court found the resulting battery on Benoit to be employment-rooted, since the issue was the temperature in the work place, a legitimate business concern. The Supreme Court found the resulting tort fairly attributable to the employer's business.
Dickerson asserts that the instant case is analogous to Benoit, contending that the violence was primarily employment-related. In support of this premise, Dickerson argues that Edwards' actions, while not benefiting the employer, were taken because of "Darryl Edwards' perception that violation of his toolbox and the equipment therein would have an adverse effect on his ability to perform the employer's business." This assertion is belied by the record. In Dickerson's deposition it was shown that the toolbox contained knives and various kitchen items commonly used by the entire kitchen staff. No single employee owned any particular knife or kitchen instrument. Rather, the utensils were the property of Ralph & Kacoo's, and if anyone needed similar items he had only to ask the manager. An order would be placed, or the employee would receive the needed items directly from the manager. It is clear that everything Edwards and Dickerson needed to perform their job as cooks was provided to them by supervisory staff.
The deposition testimony of co-employee Brenda Harris is instructive as to how this violence erupted almost simultaneously with Edwards' arrival at the work place. She describes what happened in the following manner:
Darryl was coming in from home to work, and he came right behind the line that I was frying on, and he like stumbled over my feet and I said, `Well, you could say excuse,' but it was like he had like a frown on his face. I don't know if he had a bad day or whatever, but it looked like that to me ... He did not say anything; he did not even say "excuse." So he just went on like he was going toward the back where Donald was. Lance was standing right there by the streamer, which is right by the fry station, and Lance told Darryl, "Man, Donald been in your toolbox; he got your knife ...." [S]o Darryl went straight back to Donald....
*848 Brenda Harris perceived that Edwards seemed to be in a bad mood from the moment of his arrival at work. Edwards, in his deposition, could not recall how the event happened or why it happened, only acknowledging that it should not have happened. The clear implication of the testimony of all of Ralph & Kacoo's employees is that the fight erupted for purely personal reasons when Edwards found out that Dickerson was attempting to enter Edwards' personal toolbox. The uncontested facts of this record will not support the contention that Edwards was acting within the ambit of his assigned duties or in the furtherance of his employer's objectives. The instant case is clearly distinguishable from both Benoit and LeBrane. The uncontested material facts presented by deposition and affidavit fail to demonstrate any employment-catalyst or employment-related nexus for the tort committed by Edwards upon Dickerson. The trial court was correct in declining to impose vicarious liability upon Piccadilly.
We note that summary judgment has been previously granted in at least two reported similar cases, Barto, 588 So.2d at 1357, wherein the Second Circuit, on a writ application reversed the trial court's denial of summary judgment, and Pye v. Insulation Technologies, Inc., 97-237 at p. 5, 700 So.2d at 894. We likewise conclude that the trial was correct in finding that summary judgment should be rendered in favor of the defendant, Piccadilly Cafeterias, Inc. d/b/a Ralph & Kacoo's, and against the plaintiff, Donald Dickerson, dismissing plaintiff's suit

CONCLUSION
In this case, we find the motion for summary judgment was amply supported by the depositions of Dickerson and Edwards, and their co-employee witnesses, Brenda Harris and Lance Milton, as well as the affidavit by Les Guerin, unit manager of Ralph & Kacoo's on the date of the incident. This documentation having been affirmatively produced by the mover, it then became incumbent upon the adverse party to respond by setting forth, through affidavits or other counter-veiling proof, specific facts showing a genuine issue for trial. The record contains no such affidavits, nor even an opposition memorandum. The law, La. C.C.P. art. 967, prescribes the granting of summary judgment in such instance, if appropriate. See Traweek v. Jackson, 30,248 (La.App. 2 Cir. 2/25/98), 709 So.2d 867, and cases cited therein.
The decision of the trial court is affirmed at plaintiffs cost.
AFFIRMED.
NOTES
[1] Judge D. Milton Moore, III, of the Fourth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.