GARRISON, Judge.
The trial court judge rendered two judgments. The first judgment, dated January 28, 1985, provides as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be Summary Judgment in favor of plaintiff, Gerald L. Lad-ner, and against Hartford Insurance Company in the full sum of TEN THOU *545 SAND AND NO/lOO ($10,000.00) DOLLARS, together with legal interest from date of judicial demand based on the endorsement for cargo liability under Section 315 of the Interstate Commerce Act contained in the Hartford Inland Marine Transit Policy No. 43.
IT IS FURTHER ORDERED that all other insurance claims that plaintiff may have against the Hartford Insurance Company or other defendants are reserved to be resolved at the trial of this matter.”
The second judgment, dated June 27, 1985, provides:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Gerald L. Ladner, and against defendant, Hartford Insurance Company of Southeast, in the full and true sum of one thousand six hundred forty seven and 24/100 dollars ($1,647.24) together with judicial interest from the date of demand until paid and all costs of these proceedings.”
Both judgments were appealed and have been consolidated on appeal.
The trial court judge provided the following written reasons for judgment on June 27, 1985:
“This is a suit to recover the value of lost ceiling fans owned by plaintiff, Jerry L. Ladner, stored in two warehouses and a shipping terminal owned and/or leased by Phillip J. Thomas (Thomas) and Dixie Motor Freight, Inc. (Dixie). The only defendant in the suit is Hartford Insurance Company of the Southwest which issued two policies of insurance to Dixie.
Plaintiff seeks $163,378.40 representing 4,218 fans which disappeared from Dixie’s Josephine Street warehouse in New Orleans. This amount is subject to a credit of $10,000.00 which the Court awarded to plaintiff on a Motion for Partial Summary Judgment on January 28, 1985 under the Uniform Motor Carrier Cargo Insurance Endorsement, Section 215, Interstate Commerce Act contained in the defendant’s Inland Marine Transit Policy (Transit Policy).
Plaintiff also seeks $1,647.24 representing 37 fans missing from either Dixie’s Slidell warehouse or its main shipping terminal in Kenner.
Plaintiff claims that the losses are covered under defendant’s Transit Policy or alternatively under defendant’s Special Multi-Peril Policy (SMP Policy).
Defendant argues that at the time plaintiff discovered the loss, no policy was in effect. Alternatively, defendant contends that the losses were specifically excluded under the terms of coverage.
The first issue is whether the losses occurred during the policy period. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the proof, taken as a whole, shows the fact or causation sought to be proved is more probable than not. Rye vs. Terminix Service Co., Inc., 423 So.2d 754, 756 (La.App. 4th Cir.1982).
The Court finds that plaintiff’s evidence proves that the losses occurred during the covered periods under both policies.
The next issue is whether the fans’ disappearance from Dixie’s Josephine Street warehouse is covered under either policy.
An insurance policy is a contract between the parties, and while all ambiguities must be construed in favor of the insured against the insurer, courts have no authority to change or alter its terms under the guise of interpretation when such terms are couched in clear and unambiguous language. Remondet vs. Reserve National Insurance Co., 433 So.2d 792, 795 (La.App. 5th Cir.1983).
Plaintiff testified that after selling a number of fans to T G & Y the remaining 4,218 fans stored in the Josephine Street warehouse vanished. Plaintiff testified that the fans he discovered on the Kenner terminal loading docks were identified with defective fans stored at Dixie’s Slidell warehouse. Defendant’s SMP policy declaration sheet specifically designates coverage for its Kenner terminal only. Therefore, the SMP policy *546 afford no coverage for the Josephine Street losses.
Defendant’s Transit Policy specifically covers merchandise transported on certain designated vehicles but excludes coverage on the terminals. Plaintiff presented no evidence to indicate that his merchandise was being transported to a retailer on the designated vehicles. He only stated that the fans were being stored at Josephine Street to be sold at some future date. Therefore this loss is not covered under the Transit policy.
The next issue is whether the Slidell losses are covered under either policy. Defendant’s Transit policy endorsement under Section 21 of the Interstate Commerce Act states:
‘the Company hereby agrees to pay ... any shipper or consignee for all loss of ... property ... for which loss the insured may be held legally liable, regardless of whether the motor vehicles, terminals, warehouses, and other facilities ... are specifically described in the policies or not ...
the Company shall not be liable ... for an amount in excess of $10,000.00 in respect to any ... aggregate losses of or to such property occurring at any one time and place ... ’
The Court finds that the aggregate loss sustained by plaintiff at the Slidell warehouse and Kenner terminal are covered under this provision. The loss sustained at the Josephine Street warehouse occurred at a different time and place for which plaintiff has received an award under a partial summary judgment.
There will be judgment accordingly.”
Plaintiff alleged in his petition that he had entered into a contract with defendants, Thomas and Dixie, to house and to store 5,800 ceiling fans at their Josephine Street warehouse and that 4,218 of the fans disappeared while in their possession. He further alleged that defendant, Hartford, had issued a policy of insurance to defendants covering this loss. He sought to recover $163,378 for the lost fans against the three defendants. Thomas and Dixie were never served. Hartford responded with a general denial.
In December, 1984 plaintiff moved for partial summary judgment against Hartford for $10,000 on the basis of his affidavit and two insurance policies issued by Hartford. The court scheduled this motion for hearing on January 28, 1985, the same day as the trial on the merits. On this date he granted partial summary judgment against Hartford for $10,000 and took the merits of the case under advisement after trial which consisted of the testimony of plaintiff and the admission into evidence of a number of exhibits including Hartford’s insurance policies.
One of these policies is an Inland Marine Transit Policy which provides coverage only for losses occurring while cargo is being transported by specific vehicles described in the policy. It does not cover losses to property stored in terminals. However, it contains an endorsement which is required by the federal Interstate Commerce Act providing sweeping coverage up to $10,000 for any property “coming into the possession of the insured in connection with such transportation.” Hartford’s other policy was a Special Multi-Peril (SMP) policy which afforded coverage only at the insured’s Kenner terminal.
In his testimony plaintiff stated that defendants picked up his fans in Los Angeles and stored them on Josephine Street with the understanding they would be drawn out and delivered by defendants to various outlets as plaintiff would designate. He saw his 4,218 fans at the Josephine Street warehouse in February, 1983 but when he returned to get them in March they were gone. Defendant, Thomas, admitted to him they were gone. In his direct examination no mention was made of fans stored at defendant’s Kenner or Slidell warehouses and the first mention of these was on cross-examination with the following:
Q. Mr. Ladner, were any fans stored in a warehouse of Dixie Motor Freight in Slidell, Louisiana?
A. Not these fans, no, sir.
*547 Q. Mr. Ladner, if I were to tell you that your attorney, in preparing memorandums for the Court last week, alleged as a cause of fact in this case that on or about June 3, 1983, you went to a warehouse in Slidell and discovered your fans were gone, you then drove to the main dock of Dixie in Kenner and noticed a large amount of your fans on the dock, is that true?
A. Yes, sir.
Q. You did have fans in Slidell?
A. I had fans in Slidell. Most of them were broken fans, rejected fans.
Q. Now, what main dock in Kenner are you referring to?
A. That’s at the Dixie Motor Freight Terminal. That’s where their terminal was.
Q. Are you telling the Court that the fans in Slidell had nothing to do with this lawsuit?
A. Yes, sir that is correct. Those fans was to be hauled to Houston, Texas. They were rejects going back to the one who had sold me them. I was to return them. That’s how I found those fans. It had nothing to do with these fans. I had a lot more fans.
Q. The fans that you allege in the memorandum, through your attorney, were found on a dock in Kenner, are those the fans that were supposedly in the Slidell warehouse?
A. Yes, sir.
' Q. That you’re telling the Court is these fans in Slidell and the ones on the dock in Kenner were not involved in this lawsuit?
A. There were 600 fans all total. Those were all we were concerned about. The ones we are talking about are 4,218 fans that was in the possession of Mr. Thomas.
On June 27 the trial court rendered judgment in favor of plaintiff and against Hartford for $1,647.24. Following motions for new trial the judgment became final in October. In the meantime Hartford had taken a timely appeal from the January partial summary judgment. Hartford, as well as plaintiff, appealed from the October judgment and the two cases were consolidated in this court. In its first appeal Hartford attacks the partial summary judgment against it contending that 1) plaintiff prematurely filed its motion because at that time no answer had been filed by co-defendants, Thomas and Dixie; and 2) the affidavit and other documents were insufficient to establish the absence of genuine issues of material fact.
As to the first contention plaintiff was not precluded from proceeding against Hartford before the other defendants answered the petition. It appears that the other defendants could not be served. We are unaware of any statutory or jurisprudential authority for Hartford’s position.
As to the second contention we are satisfied that the affidavit and documents dispel any genuine issue of material fact. The affidavit establishes that Hartford’s insureds took the fans into their custody pursuant to a contract with plaintiff and they lost them. Elementary bailment principles entitle plaintiff to be compensated. As to the insurance policy, the record makes it clear that it was before the trial court when the judgment was granted. It is not a part of our record of this appeal, but fortunately it is in the companion record. By its terms it insures for the loss up to $10,000. Plaintiff was entitled to summary judgment beyond any reasonable doubt.
The second judgment appealed from by Hartford is for $1,647.24 for thirty-seven fans lost by the insureds from their warehouse in Kenner or Slidell. The trial judge found that Hartford’s SMP policy did not afford coverage for this loss because it applied to the Kenner warehouse only but these fans had been stored in Slidell. On the other hand he found that Hartford’s endorsement to its Inland Marine Transit Policy did afford coverage.
*548 We reverse the June 27th judgment. By reference to plaintiffs own testimony quoted above, the fans missing from the Slidell and Kenner warehouses have nothing to do with this case. He stated unequivocably that this case pertained exclusively to the 4,218 fans stored on Josephine Street. The trial court’s conclusion that this was a separate loss entitling plaintiff to recover from Hartford based on its endorsement to the Inland Marine Transit Policy is not only unsupported by the evidence but plaintiffs right to recover for any fans in this suit over and above the 4,218 on Josephine Street was not sought in his pleadings and was specifically waived and repudiated by him on the witness stand.
For the reasons discussed, the judgment dated January 28, 1985 and providing as follows is affirmed:
“IT IS ORDERED, ADJUDGED AND DECREED that there be Summary Judgment in favor of plaintiff, Gerald L. Lad-ner, and against Hartford Insurance Company in the full sum of TEN THOUSAND AND NO/lOO ($10,000.00) DOLLARS, together with legal interest from date of judicial demand based on the endorsement for cargo liability under Section 315 of the Interstate Commerce Act contained in the Hartford Inland Marine Transit Policy No. 43.
IT IS FURTHER ORDERED that all other insurance claims that plaintiff may have against the Hartford Insurance Company or other defendants are reserved to be resolved at the trial of this matter.”
AFFIRMED.