# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-88


**ALICE F. ANDRIES**

**VERSUS**

**DAVID ANDRIES**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 221,265
HONORABLE F. RAE DONALDSON SWENT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

### MARC T. AMY
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**

Henry H. Lemoine, Jr.
607 Main Street
Pineville, LA   71360
(318) 473-4220
COUNSEL FOR DEFENDANT/APPELLANT:
     David Andries

Lauren Gay Coleman
Coleman & Henderson, LLC
910 Foisy Avenue
Alexandria, LA   71301
(318) 449-9857
COUNSEL FOR PLAINTIFF/APPELLEE:
     Alice F. Andries

AMY, Judge.

David Andries appeals the judgment partitioning the community property of his former marriage to Alice Andries. The appeal, however, appears before this court on an incomplete record as it lacks the transcript from the trial court proceedings. The pleadings demonstrate that Mr. and Ms. Andries were married in 1957 and that Mr. Andries filed for divorce on July 21, 2000. The trial court granted the divorce in August 2001. Thereafter, in June 2003, Ms. Andries filed a petition for partition of community property. The matter came before the district court for trial in March 2006. After the rendering of written reasons for ruling, the trial court signed the judgment of partition on November 16, 2006.

Mr. Andries appeals the partition of judgment, assigning the following as error:

1. The trial court erred in establishing a value of the Hancock Bank CD which was cashed and disbursed in 2000 between the parties prior to the filing of the Petition for Divorce, therefore it was not in existence at the time the Petition for Divorce was filed nor at the time of the trial of this matter.

2. The trial court erred in not placing a value on the 1990 Dodge Truck and a Lincoln that were last in the possession of Alice Andries, and who had sole use and possession of said automobiles, and did not take the necessary steps for the preservation of said automobiles.

3. The trial court erred in not even acknowledging the motor home that was a community asset and was last in the sole use and possession of Alice Andries.

4. The trial court erred in not allowing all reimbursement payments made by David Andries on community obligations that he paid after the Petition for Divorce was filed, said obligations being paid with his separate funds.

5. The trial court erred in accepting Alice Andries' claim that she would be entitled to a reimbursement for one-half of an income tax refund.

For the following reasons, we affirm.

**Discussion**

*State of the Record*

Review of Mr. Andries' assignments of error is hampered by the absence of a trial transcript. Both Mr. Andries' brief and the trial court's reasons for ruling note that the proceeding was not recorded. Counsel for Mr. Andries writes that: "When this matter went to trial on March 7, 2006, this writer had no reason to believe that the Trial Court would not record the testimony of the proceedings, as evidenced in the Reasons for Judgment."

There is no indication what action, if any, was taken to transcribe the hearing according to La.Code Civ.P. arts. 2130 and 2131, which provide:

> **Art. 2130. Record on appeal; statement of facts**
>
> A party may require the clerk to cause the testimony to be taken down in writing and this transcript shall serve as the statement of facts of the case. The parties may agree to a narrative of the facts in accordance with the provisions of Article 2131.

> **Art. 2131. Same; narrative of facts**
>
> If the testimony of the witnesses has not been taken down in writing the appellant must request the other parties to join with him in a written and signed narrative of the facts, and in cases of disagreement as to this narrative or of refusal to join in it, at any time prior to the lodging of the record in the appellate court, the judge shall make a written narrative of the facts, which shall be conclusive.

Despite his burden to do so as the appellant, there is no indication that Mr. Andries caused to be provided either a transcript or narrative of facts. *See Steinhoff v. Steinhoff*, 03-24 (La.App. 3 Cir. 4/30/03), 843 So.2d 1290; *Creech v. Creech*, 29,499 (La.App. 2 Cir. 5/7/97), 694 So.2d 589. *See also Saacks v. Saacks*, 96-736, p. 5 (La.App. 5 Cir. 1/28/97), 688 So.2d 673, 675 (wherein the fifth circuit observed that: "Appellant is in the position of having the burden to demonstrate error in the

3

judgment of the trial court. For that reason the burden is on appellant to comply with La. C.C.P. art. 2131 and to have a complete record before the court of appeal." )

Thus, while the parties' exhibits[1] have been submitted to this court, they are before us absent the context of the testimony that accompanied their introduction into evidence. The trial court, however, rendered written reasons for ruling, which demonstrate its reasoning as to its determinations. To the extent that Mr. Andries' assignments of error require reference to evidence and testimony that could have been discoverable from the transcript, this omission is imputable to him. *See Steinhoff*, 843 So.2d 1293. In *Creech*, 694 So.2d 589, the second circuit, remarked that, in instances where the record lacks a transcript and factual issues are involved, the trial court's judgment is presumed to be correct and supported by competent evidence. Thus, review is limited to determining whether the pertinent law was correctly applied to the facts. Therefore, we review Mr. Andries' appeal in light of these considerations.

---

[1] In addition to numbered exhibits provided at trial, the trial court's reasons for ruling reference the following:

> The marking of exhibits in this case has created some confusion, especially since the matter was not recorded. David Andries testified at length from a trial notebook prepared by his attorney and he used the numbering system in the notebook. The parties also introduced a few exhibits not in the notebook, which were handed to the clerk. Since the trial notebook had not been introduced at that time, the exhibits were identified as 1, etc. The trial notebook was not introduced until the end of trial, when the court asked the attorney how it was to be numbered. The attorney asked it be numbered D-1 in globo. In fact, the notebook has multiple exhibits numbered as "1," etc. Apparently, the clerk did not hear the exchange between the court and the attorney, because the minute entry does not show the introduction of the notebook. The court is certain, however, that it was.
>
> The court is also certain, however, that the notebook contains much more than David's actual testimony. There are explanatory statements that may have been more than he said and far more details are provided about bills. That is, the typed portions of the notebook are not regarded as part of the exhibits and the court has considered only the exhibits, themselves.

A version of this trial notebook has been filed as an exhibit with the record and, in light of the trial court's statement, has been considered on review.

4

*Certificate of Deposit*

The trial court recognized that the parties possessed "a CD in the amount of $40,957.37, on June 25, 2000" and, based upon a June 2000 statement of the account submitted by Ms. Andries, awarded each one-half ownership of the certificate. Mr. Andries asserts that the trial court erred in valuing the certificate of deposit at $40,957.37. Rather, he contends that it should have been valued at the time of the trial as is required by La.R.S. 9:2801.[2] Mr. Andries further contends that the certificate was "cashed some time after June 25, 2000 and prior to July 21, 2000, which was the date the community was terminated, and the funds were either used to pay on community obligations and/or disbursed between the parties."

Notwithstanding any testimony which is absent from the record and any related credibility determinations made by trial court, the reasons for ruling specifically indicate the trial court's awareness of La.R.S. 9:2801. However, the trial court observed that the parties' evidence precluded the statute's application, stating:

> The court also notes that the parties did not present all property values as of the trial date as is required by LSA-R.S. 9:2801, et seq. Neither party objected or offered trial-current evidence. The court has accepted the value presented and will calculate the distribution accordingly.

In light of this statement, and since the only evidence available for review is that offered by Ms. Andries, we find no error in the trial court's determination.

*Vehicles*

Mr. Andries next asserts that the trial court erred in failing to place a value on a 1990 Dodge Truck and Lincoln that were in Ms. Andries' possession. He contends

---

[2] Louisiana Revised Statutes 9:2801 (A)(4)(a) provides that: "The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties."

that she had full use and possession of the automobiles, but that she failed to properly preserve their value.

In this regard, the trial court stated:

> There was much testimony about cars. David has a 1997 Ford F 150, which he showed has [sic] having a 2005 blue book listing of $11,675.00. He is awarded ownership of this vehicle. Alice had a Dodge truck and someone had a Lincoln, but the testimony at trial showed the Dodge had been wrecked, had the tags pulled and was not operable and the Lincoln had not been driven since 1995. The court finds these vehicle [sic] do not have any value and do not even exist for the purposes of assigning ownership in this partition.

If the factors that Mr. Andries' advances were presented to the trial court, there is no indication of them in the materials available for review. Thus, the record reveals no error in this regard. As such, this assignment of error lacks merit.

*Motor Home*

Mr. Andries' third assignment of error concerns the couple's motor home, which, according to the trial court's ruling, was repossessed in September 2001. Ms. Andries' exhibit number 1 indicates that a deficiency of $28,739.05 remained after repossession.[3] Other than this fact, and copies of checks written as payment through September 2001, the record contains only the following comment by the trial court in its assessment of the motor home and Mr. Andries' claimed reimbursements for payments made toward the home:

---

[3] In discussing the couple's debts, the trial court explained:

> The evidence from the parties shows the former community was solvent on the date of termination, July 21, 2000. Complications have arisen, however, because the parties made interim payments, paid off remaining balances and sold property prior to the suit for partition. Thus, there were other assets that existed and were used to pay off the debts. Further, the parties have not communicated with each other and, therefore, what should have been simple has become very difficult. The parties allowed a motor home to be repossessed, instead of trying to sell the vehicle. In any event, this suit is really a partition of the remaining assets held by David, as other assets were used to pay off all debts.

7. Bank of the West (#8656) - This debt was for the Motor Home, where Alice lived until she set up the Kendall Lane property. David is awarded reimbursement for one-half of $22,274.73 or $11,137.36, for payments he made from August 2000 to September 2001, when it was repossessed. The testimony of the parties does not persuade the court that Alice should be solely responsible for the Motor Home bill.

In this assignment of error, Mr. Andries asserts that the motor home was in Ms. Andries' possession and, therefore, that she should have been held solely liable for the debt. He also contends that the trial court should have valued the motor home as "if it still existed at the time of trial" and then provided him with a proper amount of "credit" for this community asset.

This assignment lacks merit. The trial court's reasons clearly indicate that it considered the parties' evidence and testimony on this issue, awarding reimbursements for his contribution to the property. Nothing in the record reveals error in its determination.

*Reimbursement*

In a two-sentence assignment of error, Mr. Andries contends that he provided invoices and cancelled checks "proving" community debts and, therefore, he is entitled to credit "for one-half of all payments that he made as outlined and presented in the exhibits."

On the issue of reimbursements, the trial court found:

At the time of trial, all of the debts were paid. There was a date in time where the parties reached some kind of agreement to pay off creditors, but this agreement did not result in any satisfaction for the parties. [Mr. Andries] continues to hold the majority of assets and seeks reimbursements for any payment he ever made, without proof it was payment on a community obligation or acknowledging half of the payment he made was for his own part of the community debt. [Ms. Andries], on the other hand, does not claim to have made any payment on community debts, herself, but has made little or no explanation for any debt or accounts.

. . . .

> [Mr. Andries] has made multiple claims for reimbursement for payments made post-termination. These payments are set forth in the trial notebook; however, the court was not presented with any arguments or law regarding what was done.

The trial court considered each of the items for which reimbursement was claimed, finding evidence supporting a reimbursement to Mr. Andries in the amount of $21,167.09. The trial court's recognition that the cancelled checks and invoices lack context is equally true on appeal as there is no accompanying transcript.

This assignment lacks merit.

*Tax Refund*

Finally, Mr. Andries contends that the trial court erred in awarding Ms. Andries "one-half of an income tax refund from 2000, simply based on her testimony and no evidence. Mr. Andries, on the other hand, had all of the evidence in the world and the Trial Court still refused David Andries' testimony that the parties had already divided the proceeds."

Again, any testimony regarding the income tax refund is absent from the record. Further, the trial court's reasons for ruling indicate that credibility determinations were involved regarding the tax refund. The trial court explained:

> [Ms. Andries] seeks reimbursement of one half of an income tax refund of $13,170.00. She endorsed the check and says he cashed it. [Mr. Andries] claims he cashed the check and gave her half. The court accepts [Ms. Andries'] version of events. Everything else in this case demonstrates [Mr. Andries'] desire and intent to withhold paying [Ms. Andries] anything. The court does not believe he gave her the one half and she is owed reimbursement of one half or $6,585.00.

This assignment lacks merit.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assigned to the appellant, David Andries.

**AFFIRMED.**