JOAN BERNARD ARMSTRONG, Chief Judge.
 

 _JjThe plaintiff-appellant, Kelly E. McGee, appeals a June 14, 2010 summary judgment dismissing her claims against three of the defendants, Julian Mutter and his son, Julian Mutter, Jr., and 511, LLC (hereinafter “511”). However, the plaintiff appeals only the dismissal of her claims against 511. She does not appeal the dismissal of either of the Mutters. The judgment includes a determination that it is a final judgment subject to immediate appeal under La. C.C.P. art. 1915 B(l).
 

 The plaintiff is suing for personal injuries sustained on March 4, 2008, when she fell from a stationary trapeze on premises owned by the appellees. She filed suit on March 3, 2009, naming the appellees herein as defendants as well as their as of that time unknown liability insurers, along with Ms. Raven Hinojosa, individually and d.b.a Aurora Aerials and the Black Forest Fancies and their unknown liability insurers.
 

 511 filed its motion for summary judgment over eleven months later, on February 12, 2010. The hearing on the motion for summary judgment did not take place until over three months thereafter, on May 21, 2010.
 

 |2Apparently, for some time prior to the accident the plaintiff had been receiving trapeze lessons from another defendant, Raven Hinojosa, the leader of an aerial group known as Aurora Aerials. The plaintiff provided massage services to Ms. Hinojosa in exchange for the trapeze lessons. The trapeze lessons were given in a warehouse owned by 511, L.L.C. (hereinafter referred to as “511”), which in turn is owned by Julian Mutter.
 

 In her deposition, plaintiff testified that she had been practicing trapeze under Hi-nojosa’s instruction for five months before the accident. It is uncontested that during
 
 *519
 
 that time she had no contact with the Mutters or any interaction with any other representative of 511. She testified that she had no dealings with Julian Mutter and did not even know who he was. Nor did either Julian Mutter or his son have any involvement with her arrangement with Hinojosa. Likewise, she never had any interaction with 511.
 

 She alleged that the trapeze was approximately ten feet from the floor and when she fell she landed on a mat that was approximately 1 ½ feet thick. She admitted in her deposition that she knew that if she fell she could hurt herself, stating, “Yeah. Everyone knew that.” She does not allege that the trapeze malfunctioned or broke or that any component of the premises malfunctioned or broke. She does not allege that the trapeze or the mats were owned by 511. She fell while attempting a difficult manoeuver called the “gazelle,” a manoeuver -with which she had informed Hinojosa she was not comfortable.
 

 The plaintiff testified that after the accident, Hinojosa admitted to her that she caused the plaintiffs accident. The plaintiff does not argue that her accident was the result of any failure on the part of the appellees to properly maintain the building.
 

 [¡¡The plaintiff argues that 511 knew or should have known of the dangerous conditions that existed on the premises in connection with the trapeze, and as the owner of the building should be responsible for the injuries she sustained when she fell. Added to this, the plaintiff argues that no lease between Hinojosa and 511 was ever produced so there is no lease language to shift liability from 511 as lessor to Hinojo-sa as lessee, i.e., no language shifting the care custody and control of the premises to the lessee. Finally, plaintiff argues that the summary judgment was improvidently granted as discovery was not complete.
 

 This Court recently described the standard of summary judgment review as follows:
 

 Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate.
 
 Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230-81. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La.Code Civ. Proc. art. 966 A. (2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 
 Id.;
 
 La.Code Civ. Proc. art. 966 C. (2).
 

 
 *520
 
 |4An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.Code Civ. Proc. art. 967;
 
 Townley v. City of Iowa,
 
 97-493, p. 5 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
 

 The amended article 966 substantially changed the law of summary judgment. Under the prior jurisprudence, summary judgment was not favored and was to be used only cautiously and sparingly. Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under La.Code Civ. Proc. art. 966 C, once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the mover has properly supported the motion for summary judgment, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
 

 Argument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact. La. Code Civ. Proc. art. 967;
 
 Cox Cable New Orleans, Inc. v. City of New Orleans,
 
 94-2102, p. 4 (La.App. 4 Cir. 11/16/95), 664 So.2d 742, 744. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues.
 
 Davenport v. Amax Nickel, Inc.,
 
 569 So.2d 23, 27 (La.App. 4 Cir.1990).
 

 A fact is material if it is essential to a plaintiffs cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute.
 
 Prado v. Sloman Neptun Schiffahrts, A.G.,
 
 611 So.2d 691, 699 (La.App. 4th Cir.1992).
 

 Keasley v. Transit Mgmt. of Southeast Louisiana,
 
 10-0786, pp. 16-18 (La.App. 4 Cir. 12/7/10), 52 So.3d 976, 986.
 

 The plaintiff argues that 511 should be liable because it knowingly (or should have known) allowed trapeze lessons to be conducted in an unsafe manner |swith the trapeze at an unsafe height, without proper padding and cushioning to break the fall in the absence of safety nets. 511’s arguments focus on the fact that there is no showing that there was any failure to maintain the premises properly and that no defect in the structure caused the accident. 511 argues, in effect, that the risks associated with a trapeze do not per se render the premises defective any more than sky diving per se would render an airplane defective. Moreover, we note that in both cases the risks are immediately obvious to all those brave enough to engage in such activities. In fact, in plaintiffs brief to this Court, she states that “there were well known and dangerous [trapeze] activities taking place at the warehouse” owned by 511. Where the risk is obvious, there is no duty to warn or protect against it.
 
 Albert v. J & L Engineering Company,
 
 214 So.2d 212 (La.App. 4th Cir.1968);
 
 Leonard v. Albany Mach. & Supply Co.,
 
 339 So.2d 458, 463 (La.App. 1st Cir.1976).
 

 As the First Circuit explained in
 
 McCoy v. Liberty Mut. Life Ins. Co.,
 
 42,118, p. 5-6 (La.App. 2 Cir. 5/9/07), 956 So.2d 802, 806:
 

 
 *521
 
 The owner of a building cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others.
 
 Entrevia v. Hood,
 
 427 So.2d 1146, 1149 (La.1983). Where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable.
 
 Jackson v. Gardiner,
 
 34,643 (La.App. 2d Cir. 4/4/01), 785 So.2d 981,
 
 supra.
 

 Id,
 

 As the Supreme Court explained in
 
 Eisenhardt v. Snook,
 
 08-1287, pp. 5-6 (La.3/17/09), 8 So.3d 541, 544-45:
 

 [W]e have recognized that defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not | fibe unreasonably dangerous, and the defendant may owe no duty to the plaintiff. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner.
 
 Dauzat v. Curnest Guillot Logging, Inc.,
 
 08-0528 (La.12/2/08), 995 So.2d 1184;
 
 Hutchinson v. Knights of Columbus,
 
 03-1533, p. 9 (La.2/20/04), 866 So.2d 228, 234;
 
 Pitre v. Louisiana Tech University,
 
 95-1466, 95-1487 at p. 11 (La.5/10/96), 673 So.2d 585, 591.
 

 Id.; See also Bozeman v. Scott Range Twelve Ltd. Partnership,
 
 03-0903, pp. 5-6 (La.App. 1 Cir. 4/2/04), 878 So.2d 615, 619.
 

 In her affidavit in opposition to the motion for summary judgment, the plaintiff avers that the following dangerous conditions existed:
 

 1. The “trapeze ... was located dangerously high up from the floor.”
 

 2. “[Tjhere was no safety net under the trapeze.
 

 3. “[Tjhere were other dangerous conditions present on the premises as well.”
 

 4. “The trapeze could have been located lower to the ground, which would have prevented or mitigated my injuries.”
 

 5. “There was also a “self repair” bicycle shop on the premises at which dangerous tools were in use on a regular basis.
 

 The plaintiff contends that on the motion for summary judgment, the trial court was bound to accept as true the existence of each of these allegedly dangerous conditions and that the alleged existence of any one of these dangerous conditions creates a genuine issue of material fact as to 511’s responsibility for allowing that condition to exist on the premises. For purposes of argument only, we shall analyze each of plaintiffs contentions as though proven.
 

 17First, we shall address the easiest of these allegedly dangerous conditions. The allegation that there “were other dangerous conditions present on the premises” is so broad and vague and conclusory in nature as to be of no legal consequence. Additionally, the plaintiff fails to make any allegations explaining how the existence of such unnamed dangerous conditions contributed in any way to her fall.
 

 Likewise, the allegation that there were dangerous tools in use in the bicycle shop on the premises is legally insufficient as it fails to allege any connection between the presence of these tools and the plaintiffs fall.
 

 
 *522
 
 The allegation that the trapeze was too high and the allegation that it should have been lower to the ground is essentially the same allegation expressed in two different ways. As noted earlier, this condition is so obvious that 511 had no duty to warn or protect against it.
 

 Finally, there is the allegation that there was no safety net under the trapeze, which is integrally related to the allegations that the trapeze was too high and that it should have been lower to the ground. Again, this is a condition that is so obvious that 511 had no duty to warn or protect against it.
 

 Based on these allegations, the plaintiff cites a number of cases which she contends support her theory of liability against the owner. The plaintiff relies primarily on
 
 Yokum v. 615 Bourbon Street, L.L.C.,
 
 07-1785 (La.2/26/08), 977 So.2d 859 and
 
 Sam v. Theriot,
 
 49 So.2d 484 (La.App. 1st Cir.1950). The Louisiana Supreme Court approached
 
 Yokum
 
 from the standpoint of a predial servitude under the laws of vicinage, La. C.C. art. 667, et seq. Those code articles have no bearing on this case as the plaintiffs claim is not based on vicinage. See
 
 Dean v. Hercules, Inc.,
 
 328 So.2d 69, 71 (La.1976), where the Louisiana Supreme Court explained that:
 

 laC.C. 667 is the embodiment of the maxim “sic utere tuo, ut alienum non lae-das;” along with articles 668 and 669, it establishes the reciprocal rights and obligations of neighbors.
 
 Chaney v. Travelers Insurance Co.,
 
 259 La. 1, 249 So.2d 181 (1971). See Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667-69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195 (1974).
 

 More importantly,
 
 Yokum
 
 has nothing to do with an obvious risk.
 

 In
 
 Sam, supra,
 
 a child was killed by an automobile at a “Hell Driving” exhibition held by the lessee on premises leased from the owner, i.e., the claimant was injured as the result of an activity conducted on the premises rather than a defect in the premises itself. The owner-lessor was relieved of liability because of a clause in his lease with the operator of the exhibition stating that the operator of the exhibition would have full control of the premises and that the operator of the exhibition would be responsible for all damages. The plaintiff infers from
 
 Sam
 
 that the absence of any similar lease in the instant case means that 511 can be held responsible for dangerous activities conducted on its premises with either its actual or constructive knowledge. However, the plaintiff cites no cases in Louisiana and this Court has found none that would impose liability on the owner under facts anywhere remotely resembling those of this case, regardless of whether there was a written lease. Moreover, there was no obvious direct risk to the child injured in
 
 Sam
 
 comparable to the risk of falling from the trapeze in the instant case.
 

 Choyce v. Sisters of Incarnate Word,
 
 25,958 (La.App. 2 Cir. 8/19/94), 642 So.2d 287, 290, was a slip and fall case in which it was determined that the defendant hospital frequently waxed its floors, which were marble or terrazzo. In holding the hospital-owner of the premises liable the court relied on the following finding that is inapplicable to the instant case: “The testimony of plaintiff’s expert |9that marble tile and terrazzo type floors become slippery when waxed is uncontroverted.” Thus,
 
 Choyce
 
 is distinguishable from the instant case in two critical respects: (1) the owner of the premises created the condition which resulted in the plaintiffs injury; and (2) the owner conducted the activity for which the premises was used. In the instant case, the owner neither created the condition that allegedly resulted in the plaintiffs injury nor conducted the trapeze
 
 *523
 
 class. And again, there was no obvious risk in
 
 Choyce
 
 comparable to that posed by the trapeze in the instant case.
 

 Collins v. Christophe,
 
 479 So.2d 537, 538 (La.App. 1st Cir.1985), involved a suit for damages in tort alleging a fall during a party at a private residence. It is inappo-site because as the court did not hold the owner liable and also because the owner was hosting the party. In the instant case the owner was not conducting the activities on the premises.
 

 In
 
 Bertini v. Scaife,
 
 04-1229 (La.App. 3 Cir. 2/16/05), 895 So.2d 619, the court held the lessor liable for a fire that the court found was caused more likely than not by a defect in the fireplace. The plaintiff does not allege the existence of any defect in the premises in the instant case; rather, the plaintiff alleges a defect on the premises created by the occupant of the premises. The facts in
 
 Bertini
 
 and the duty found to be owed under those facts have no bearing on the instant case.
 

 In
 
 Patrick v. Employers Mut. Cas. Co.,
 
 99-94 (La.App. 3 Cir. 8/11/99), 745 So.2d 641, the parents of bar patron who was shot during an altercation in a bar parking lot sued the owner of shopping center in which bar was located. The court found that the owner of the center had the duty to provide security for the center and had breached that duty. The facts in Patrick and the duty found to be owed under those facts have no bearing on the instant case.
 

 Granger v. U.S. Fid. & Guar. Co.,
 
 266 So.2d 526 (La.App. 3rd Cir.1972) involved the breach of the owner’s duty of due care owed to the owner’s business invitee who was gored by a bull, and the owner’s employees’ negligence in failing to restrain the bull or in failing to adequately warn the invitee. Therefore,
 
 Granger
 
 has no bearing on the instant case.
 

 Again we note that none of the cases cited by the plaintiff imposed liability on the owner based on facts even remotely resembling the facts of the instant case, and this Court’s independent research has revealed none.
 

 The plaintiff also makes the procedural argument that it was premature to grant the motion for summary judgment prior to completion of discovery. Specifically, the plaintiff contends that one of the defendants, Raven Hinojosa, is avoiding service and appears to be in active hiding from this lawsuit and that, therefore, discovery from her has not even begun. However, the plaintiff does not suggest how Ms. Hinojosa’s testimony would implicate 511 in plaintiff’s fall, i.e., the plaintiff fails to make a case for how she may be prejudiced in her case against 511 by being denied the opportunity to pursue further discovery against Ms. Hinojosa. The judgment from which the plaintiff appeals does not dismiss the plaintiff’s claim against Ms. Hinojosa and, based on the record before us, it appears that the plaintiff is free to pursue her claim against Ms. Hinojosa as well as further discovery in that regard.
 

 The plaintiff also speculates that it is possible that there is a joint venture relationship between Ms. Hinojosa and 511 and that this cannot be determined without the deposition testimony of Ms. Hinojosa. The plaintiff does not contend that she has any reason to believe that such a joint venture exists, merely that it is a possibility. Because of this possibility, the plaintiff contends that the summary Injudgment was premature because it deprived her of the ability of deposing Ms. Hinojosa to determine whether a joint venture with 511 may have existed. Consequently, the plaintiff asserts that the summary judgment should be reversed on this account. If one could defeat a motion for summary
 
 *524
 
 judgment based on a mere conjectural possibility, it would render the summary judgment procedure useless. This is why a “mere allegations” and “argument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact.”
 
 Keasley, supra,
 
 10-0786 at pp. 17-18, 52 So.3d at 986.
 

 The plaintiff does not describe what attempts she made to serve Ms. Hinojosa, and there is nothing in the record to show what attempts were made to serve her. Therefore, we find that the plaintiff has failed to show how the trial judge abused her discretion by denying her more time to pursue discovery against Ms. Hinojosa.
 

 In any event, whether or not the plaintiff could have deposed Ms. Hinojosa would in no way have changed the fact that where the risks were obvious, as they were in the instant case, 511 had no duty to warn or protect against them.
 

 The plaintiff argued in her opposition to the motion for summary judgment that: “The identity of an important witness, the night watchman and security man, Paul Lynch, has just been ascertained, and his deposition remains to be taken.” The plaintiff alleges that 511 could have acquired constructive knowledge of the activities on the premises through this night watchman. However, she does not explain exactly when or how the identity of the night watchman was obtained, or what efforts she made to obtain that information, or what efforts she has made since obtaining that information to depose Mr. Lynch, in order that this Court might determine the reasonableness of her assertion that the trial court erred in not | ^permitting her more time in which to pursue this aspect of discovery. Additionally, we find no formal motion for continuance based on this argument in the record.
 

 The plaintiff filed her original petition on March 3, 2009. Ms. Hinojosa was named as a defendant in the plaintiffs original petition. 511 filed its motion for summary judgment over eleven months later, on February 12, 2010. The hearing on the motion for summary judgment did not take place until over three months later, on May 21, 2010.
 

 From the record, it appears that 511 commenced discovery in October of 2009. We find nothing in the record showing that the plaintiff made any discovery attempts on anyone at any time in the trial court. The plaintiff alleges that Ms. Hinojosa is avoiding service, but there are no returns in the record that would support such a contention. There is nothing in the record indicating that the plaintiff has made a timely, good faith effort to pursue discovery. If there were any such evidence in the record before the trial court, and we are not saying that there was, it has not found its way into the record before this Court. The inadequacy of the record, if any, is imputable to the appellant.
 
 Yokum v. Court of Two Sisters, Inc.,
 
 06-0732, p. 3 (La.App. 4 Cir. 11/21/06), 946 So.2d 671, 673;
 
 Jamie Land Co., Inc. v. Jones,
 
 05-1471, p. 3 (La.App. 1 Cir. 6/9/06), 938 So.2d 738, 739. The inadequacy of an appellate record for which an appellant is responsible cannot operate to the detriment of an appellee.
 
 Alexander v. Parish of St. John The Baptist,
 
 09-840, p. 9 (La.App. 5 Cir. 3/23/10), 33 So.3d 999, 1005,
 
 writ denied,
 
 10-1289, (La.9/17/10), 45 So.3d 1056. The burden is on appellant to comply with La. C.C.P. art. 2131 and to have a complete record before the court of appeal.
 
 Andries v. Andries, 07-88,
 
 p. 3 (La.App. 3 Cir. 5/30/07), 957 So.2d 954, 955.
 

 11sThe plaintiff has not explained what efforts she may have made to pursue discovery or obtain service on Ms. Hinojosa. The same is true of her allegations regarding the night watchman, Paul Lynch.
 

 
 *525
 
 La. C.C.P. art. 966 allows the filing of a motion for summary judgment after a “reasonable time for discovery.” There is no requirement that discovery be completed before a motion for summary judgment is filed or heard.
 
 Rucker v. Temps Today, Inc.,
 
 09-1257, p. 4 (La.App. 4 Cir. 5/5/10), 38 So.3d 1018, 1020,
 
 writ
 
 denied, 10-1264 (La.9/17/10), 45 So.3d 1054;
 
 Newton &
 
 Associates,
 
 Inc. v. Sheridan,
 
 99-2048, p. 6 (La.App. 4 Cir. 12/13/00), 775 So.2d 1144, 1147. In
 
 Rucker,
 
 this Court explained that:
 

 This Court has previously held that a summary judgment proceeding was not premature in a situation where some defendants, who apparently could not be served, had not answered the petition at the time the motion for summary judgment was filed. See
 
 Ladner v. Thomas,
 
 487 So.2d 544 (La.App. 4 Cir.1986). Furthermore, there is no requirement that discovery be completed before a motion for summary judgment is filed or heard.
 
 Bourgeois v. Curry,
 
 2005-0211, p. 10 (La.App. 4 Cir. 12/14/05), 921 So.2d 1001, 1008. Plaintiffs had a fair opportunity to conduct discovery in this case prior to the hearing on the motion for summary judgment.
 

 Id.
 

 The determination of what constitutes a “reasonable time for discovery” lies within the wide discretion of the trial court in discovery matters. This court discussed the trial court’s discretion in denying further discovery at length in
 
 Williams v. Mem’l Med. Ctr.,
 
 03-1806, p. 18 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1055, including the following statement:
 

 It is the province of the trial court to control the progress of discovery. Where, as here, the plaintiff had adequate time since the filing of the complaint [in July |142001] to secure discovery and was given the opportunity for discovery, there was no abuse of the trial court’s wide discretion in discovery matters [in ruling on the motion in August 2002].
 
 Rhea
 
 [v.
 
 Winn Dixie Market Place Store],
 
 2002-2181 at p. 4 [ (La.App. 4 Cir. 6/4/03)], 849 So.2d [759] at 762.
 

 Id.,
 
 03-1806 at pp. 17-18, 870 So.2d at 1055.
 

 The summary judgment was granted in
 
 Rhea
 
 thirteen months after the filing of the petition prior to the completion of discovery. In the instant case over fifteen months elapsed from the filing of the petition to the granting of the motion for summary judgment.
 

 Based on the record and timeline in the instant case, we find no abuse of discretion in the trial judge’s decision to proceed to summary judgment when she did.
 

 The plaintiff also complains of an allegedly forged document that purports to be a limitation of liability agreement between the plaintiff and Ms. Hinojosa, but that document is irrelevant to this summary judgment appeal as 511 in no way relied upon that document in its motion for summary judgment or on this appeal.
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED